

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-25-00113-CV

———————————————————

ANTHONY F. VACCARO, JR., Appellant

V.

THE LINCOLN NATIONAL LIFE INSURANCE COMPANY, Appellee

On Appeal from the 236th District Court
Tarrant County, Texas
Trial Court No. 236-354720-24

Before Bassel, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Wallach

# MEMORANDUM OPINION

This is an appeal from a post-judgment Order Appointing Turnover Receiver in the 236th District Court that appointed a receiver and ordered all of Vaccaro's non-exempt property held *in custodia legis* as of the date of the order. Vaccaro contends that the trial court erred because it: (1) appointed a receiver over his property without jurisdiction because another court—the 67th District Court—had already appointed a receiver over his property, and (2) granted a post-judgment turnover order without jurisdiction because another court—the 67th District Court—had already appointed a receiver of his property. We will overrule both of Vaccaro's issues and affirm the judgment of the trial court.

## I.    Background

The sequence of events underlying this appeal is as follows:

   * January 3, 2022: In the 67th District Court of Tarrant County, Raymond James & Associates obtained its first Order for Turnover Relief and Appointment of Receiver against Vaccaro.[1] This order directed the receiver to "take possession of and sell the leviable, non-exempt assets of" Vaccaro, imbued the receiver "with the power and authority to take possession of and sell all leviable property of" Vaccaro, and specified that with respect to any such assets, "all such property shall be held *in custodia legis*" "as of the date of" the order.

   * October 13, 2022: This court reversed the January 3, 2022, Order for Turnover Relief and Appointment of Receiver and remanded the case to the

---

[1]Raymond James had secured a foreign judgment against Vaccaro for $1,742,973.53 (less a $200,000 credit) and domesticated it in the 67th District Court on August 27, 2021.

trial court. *Vaccaro v. Raymond James & Assocs., Inc.*, 655 S.W.3d 485, 493 (Tex. App.—Fort Worth 2022, no pet.).

* June 20, 2023: After remand to the 67th District Court, Raymond James obtained a new Order Appointing Receiver on June 20, 2023, set to expire on October 18, 2023, giving the receiver the authority to take possession of Vaccaro's non-exempt property, sell it, and pay the proceeds to Raymond James, among other powers.

* July 5, 2023 through February 11, 2025: Raymond James obtained an Amended Order Appointing Receiver, set to expire on December 27, 2023 and an order extending the receivership on June 7, 2024. A second amended order appointing a receiver followed on December 3, 2024, a Third Amended Order Appointing Receiver on February 11, 2025, and another order extending the receivership on June 2, 2025. None of the Raymond James orders after the original January 3, 2022 order contain any language regarding Vaccaro's assets being held *in custodia legis* or otherwise deemed to be in the possession of the new receiver or court. The February 11, 2025 order (the competing order) gave the receiver the authority to take possession of Vaccaro's non-exempt assets and sell them, among other powers. This competing order was extended on May 30, 2025, to expire on November 29, 2025.

* February 14, 2025: After domesticating its own foreign judgment against Vaccaro, Appellee The Lincoln National Life Insurance Company obtained its Order Appointing Turnover Receiver against Vaccaro in the 236th District Court of Tarrant County.[2] In contrast to the competing order (and prior iterations thereof other than the January 2022 one reversed on appeal), Appellee's turnover order expressly provides that all of Vaccaro's nonexempt assets "shall be held *in custodia legis* of [Appellee's] Receiver as of the date of the Order" even before the receiver took actual possession of any property.

---

[2]On June 4, 2024, the Allen County, Indiana Superior Court, rendered a judgment for Appellee against Vaccaro for $1,242,792.77, 8.5% pre-judgment interest on the judgment starting on September 22, 2022, post-judgment interest under Indiana law, and $35,149.37 in attorney's fees and costs. On July 22, 2024, Appellee domesticated its judgment against Vaccaro in Texas in the action below. Vaccaro has never appealed or otherwise challenged this judgment.

It is from the turnover order and order appointing a receiver in the 236th District Court that Vaccaro appeals.[3]

## II.    Analysis

Vaccaro raises two issues on appeal:

1.    The district court committed reversible error in appointing a receiver without jurisdiction because another trial court had already appointed a receiver over Vaccaro's property.

2.    The district court committed reversible error in granting a post-judgment turnover order without jurisdiction because another trial court had already appointed a receiver over Vaccaro's property.

Vaccaro first relies on the doctrine of dominant jurisdiction to support his contention that only the 67th District Court had jurisdiction over his non-exempt property. He argues that the Raymond James foreign judgement was domesticated first in time in the 67th District Court, so that court acquired dominant jurisdiction to the exclusion of the 236th District Court. But the question of dominant jurisdiction "only arises '[w]hen an inherent interrelation of the subject matter exists in two pending lawsuits.' If such an inherent interrelationship exists, we then assess dominant jurisdiction. But if not, then dominant jurisdiction is not an issue, and both suits may proceed." *In re J.B. Hunt*, 492 S.W.3d 287, 292 (Tex. 2016) (quoting *Wyatt v. Shaw Plumbing Co.*, 760 S.W.2d 245, 247 (Tex. 1988)). In this case, no such inherent

---

[3]All of the turnover orders and orders appointing receivers in both courts were issued pursuant to the Texas Turnover Statute. *See* Tex. Civ. Prac. & Rem. Code Ann. § 31.002.

4

interrelation exists; there are simply two independent collection cases brought by two separate creditors on separate debts against a common debtor. As a result, no dominant jurisdiction analysis is necessary. *See id.* at 294 n.21.

The real crux of Vaccaro's argument is based on the principle of *custodia legis*—that because the 67th District Court first appointed a receiver over his non-exempt property and issued a turnover order for that property, the 236th District Court had no jurisdiction to subsequently appoint a different receiver or issue a turnover order over that same non-exempt property. Vaccaro relies primarily on *First Southern Properties Inc. v. Vallone*, 533 S.W.2d 339, 341 (Tex. 1976), a pre-turnover statute case, brought by a court-appointed trustee to set aside a foreclosure sale under a deed of trust. *Id.* at 340. The court, quoting *Hacker v. Hacker*, 4 S.W.2d 218, 221 (Tex. App.—Galveston 1928, no writ), described the *custodia legis* rule:

> We agree with appellant that the sale under the trust deed was unauthorized and did not pass appellant's title to the defendant Schwiekart, because the property at the time of the sale was in custodia legis. The district court of Harris [C]ounty having acquired jurisdiction over the property by the divorce proceeding, and having appointed a receiver to take charge of it and dispose of it in accordance with the decree of that court, no valid sale of the property could be made under process from any other court *without the consent of the court in which the receivership was pending*, and for a stronger reason a sale by a trustee foreclosing a lien would not affect the title held by the receiver.

*Vallone*, 533 S.W.2d at 341–42 (emphasis added).

From this we conclude that the competing order from the 67th District Court—the last order issued before the order in the 236th District Court—placed

5

Vacarro's non-exempt property *in custodia legis* of the 67th District Court regardless of the fact that its order did not specifically state that the property was being held *in custodia legis*. *M&E Endeavours LLC v. Air Voice Wireless LLC*, Nos. 01-18-00852-CV, 01-19-00180-CV, 2020 WL 5047902, at \*5 (Tex. App.—Houston [1st Dist.] Aug. 27, 2020, no pet.) (mem. op.) ("Once a turnover order appointing a receiver is signed, all of the judgment debtor's non-exempt property becomes property *in custodia legis*.") (emphasis added); *Tex. Am. Bank/W. Side v. Haven*, 728 S.W.2d 102, 104 (Tex. App.—Fort Worth 1987, no writ). However, "[a] court is not deprived of jurisdiction over controversies concerning property in the custody of another court in so far as it can exercise such jurisdiction without disturbing the possession of such other court." *Kull v. Brown*, 165 S.W.2d 1011, 1014 (Tex. App.—Texarkana 1942, no writ) (quoting 21 C.J.S. Court § 495). For example, consent by the court holding property *in custodia legis* allows other courts to dispose of such property. *Vallone*, 533 S.W.2d at 341–42. Thus, the 236th District Court had jurisdiction to issue the February 14, 2025 order so long as the order did not interfere with the 67th District Court's jurisdiction.

Applying the reasoning above, Vaccaro's issues fail for several reasons. First, Vaccaro is not entitled to the benefit of the *custodia legis* doctrine and therefore cannot seek relief based on that argument. By analogy,

> as a general rule, Texas courts *will not allow a judgment debtor to use the doctrine of in custodia legis to protect funds from garnishment*. The doctrine [custodia legis] *was not formulated to protect any party claiming entitlement to the funds*. Rather, the doctrine is enforced by the courts to preserve the jurisdiction of the court administering the property in issue. Its purpose

6

is to prevent conflicts of jurisdiction from one court to another and to insure orderly judicial procedure in the administration of funds.

*Daniels v. Pecan Valley Ranch, Inc.*, 831 S.W.2d 372, 383 (Tex. App.—San Antonio 1992, writ denied) (emphases added); *Sw. Bell Tel. Co. v. Watson*, 413 S.W.2d 846, 848 (Tex. App.—Corpus Christi 1967, no writ). The same rationale would apply here because Vaccaro is attempting to utilize the *custodia legis* principle to protect his assets. Since Vaccaro is not entitled to the benefit of the doctrine of *custodia legis*, he is not entitled to relief on appeal in this case because he is not injuriously affected. *See Tex. Workers' Comp. Ins. Fund v. Mandlbauer*, 988 S.W.2d 750, 752 (Tex. 1999); *Jackson v. Fontaine's Clinic*, 499 S.W.2d 87, 92 (Tex. 1973). He is the judgment debtor in two cases, and his non-exempt property has been made the subject of turnover and receivership orders in both cases. So his non-exempt property, to the extent of the amount of the debts in the two cases, is going to be leaving his custody and control and going to his judgment creditors regardless of which order prevails. And, here, there is no actual conflict between the two courts demonstrated by the record.

Second, even if Vaccaro were entitled to raise the doctrine of *custodia legis*, there was no violation demonstrated in the record. As observed by the court in *In re deShetler*, No. 09-17-00031-CV, 2017 WL 1173811, at *4 (Tex. App.—Beaumont March 30, 2017, orig. proceeding) (mem. op.),

> [t]urnover orders are governed by Section 31.002 of the Texas Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 31.002 (West 2015). Section 31.002(a) affords a judgment creditor aid from a court of appropriate jurisdiction through injunction or other

means to reach property to obtain satisfaction of a judgment if the judgment debtor owns property that cannot readily be attached or levied on by ordinary legal process, and is not exempt from attachment, execution, or seizure. *Id.* § 31.002(a). The purpose of the turnover proceeding is merely to ascertain whether or not an asset is in the possession of the judgment debtor or subject to the judgment debtor's control. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 227 (Tex. 1991). The purely procedural nature of the turnover statute is well settled, and the statute does not allow for a determination of the substantive rights of the involved parties. *See Republic Ins. Co. v. Millard*, 825 S.W.2d 780, 783 (Tex. App.—Houston [14th Dist.] 1992, orig. proceeding). When there is a factual dispute as to the ownership interest of the judgment debtors, the trial court needs to hold an evidentiary hearing prior to entering a turnover order to establish the ownership. *Plaza Court, Ltd. v. West*, 879 S.W.2d 271, 277 (Tex. App.—Houston [14th Dist.] 1994, orig. proceeding).

Additionally, turnover orders do not transfer anything where they merely authorize the receiver to take possession of the debtor's leviable assets. *Flooring Systs., Inc. v. Chow*, No. 4:12-CV-475, 2013 WL 4674667, at *5 (E.D. Tex. Aug. 29, 2013), *aff'd sub nom., In re Poston*, 765 F.3d 518 (5th Cir.)). Therefore, the mere issuance of the February 14, 2025 order by the 236th District Court did not, in and of itself, interfere with the jurisdiction of the 67th District Court and its competing order.

We overrule Vaccaro's two issues on appeal.

## III. Conclusion

Having overruled both of Appellant's issues, we affirm the trial court's judgment.

8

/s/ Mike Wallach
Mike Wallach
Justice

Delivered:  January 8, 2026